**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1734-17T3

JARMAINE R. JACKSON
and JOHNNY DELVALLE,

 Plaintiffs-Appellants,

v.

GELDHAUSER SHIFFMAN
& RIZZO,

 Defendant-Respondent.

_____

   Submitted January 28, 2019 – Decided February 7, 2019

   Before Judges Sabatino and Haas.

   On appeal from Superior Court of New Jersey, Law
   Division, Ocean County, Docket No. DC-006408-17.

   Roberta L. Stonehill, attorney for appellants.

   Geldhauser & Rizzo, LLC, attorneys for respondent
   (John J. Rizzo, on the brief).

PER CURIAM

Plaintiffs Jarmaine R. Jackson and Johnny Delvalle[1] appeal from the Special Civil Part's October 31, 2017 order granting defendant Geldhauser Shiffman & Rizzo, LLC's (the law firm's) motion for summary judgment, and dismissing plaintiffs' complaint for breach of contract. We affirm.

We begin by reciting the most salient facts from the record, viewing them in the light most favorable to plaintiffs, the non-moving parties. Polzo v. Cnty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

This matter had its genesis in the McCormack action that the law firm filed in 2013 on behalf of its client, William McCormack, against the local chapter of the Elks Lodge (Lodge), Jackson, and Delvalle.[2] The parties have not provided us with the complaint in that matter, but both sides represent that this was a personal injury action in which McCormack sought damages against the Lodge, Jackson, and Delvalle for injuries he sustained after he was allegedly attacked during a fight that occurred in the Lodge parking lot following a party

---

[1] We refer to Jackson and Delvalle collectively as plaintiffs when we are discussing the matter involved in the current appeal. However, they were defendants in an earlier action (the McCormack action) and, to avoid confusion, we refer to them by their surnames in connection with that action.

[2] Docket No. OCN-L-3019-12.

A-1734-17T3

in March 2011. Jackson and Delvalle were present at the party, and may have been assisting a DJ or performing other work in connection with the event. McCormack also asserted that Jackson and Delvalle booked the Lodge for the party. However, McCormack did not "allege[] that . . . Jackson and Delvalle committed the actual assault upon [him,] but [instead argued] that [Jackson and Delvalle] were responsible for the actions of the guests attending 'their party.'"

Jackson and Delvalle denied all of McCormack's allegations. As the litigation progressed, Jackson and Delvalle filed a motion to amend their answer to include a counterclaim against McCormack that would allege that his claims against them were frivolous under Rule 1:4-8 and N.J.S.A. 2A:15-59.1. On October 11, 2013, the trial court denied this motion.

The matter proceeded to arbitration on July 10, 2014. Only a partner in the law firm, acting as McCormack's attorney, and Jackson and Delvalle's attorney participated in the arbitration. At the conclusion of the hearing, the two arbitrators gave the attorneys a copy of the written "Report and Award of Arbitrator(s)" as required by Rule 4:21A-5. The arbitrators found that the Lodge was 100% liable for McCormack's injuries and set his damages at $10,000.

A-1734-17T3

The arbitrators each signed the report and gave it to McCormack's attorney, who signed it to acknowledge receipt.[3] Jackson and Delvalle's attorney then wrote on the form above her signature, "Subject to Jackson and Delvalle being compensated for costs and attorneys['] fees subsequent to this." Significantly, the arbitrators had not ordered that Jackson and Delvalle should be compensated for their costs and fees by either McCormack or the Lodge, and McCormack's attorney had not agreed to that relief at the arbitration hearing.

Thereafter, none of the parties filed a notice of rejection of the award, or demanded a trial de novo as permitted under Rule 4:21A-6(b)(1). McCormack settled his claim against the Lodge and, on September 16, 2014, the trial court dismissed the matter pursuant to Rule 4:21-6(b)(1).

Over the next thirty-three months, Jackson and Delvalle's attorney asserts that she sent the law firm several letters[4] asking that it pay Jackson and Delvalle for their costs and fees in the McCormack action. The attorney asserted that the law firm had "consented to and contracted" to pay these expenses when she

---

[3] Directly above the spaces for the attorneys' signatures, the report stated: "Counsel and pro se litigants acknowledge receipt of this award by signing below. Print name next to signature."

[4] Plaintiffs included only one of these letters in their appellate appendix. This letter was dated February 27, 2017, and had a draft complaint for breach of contract attached to it.

A-1734-17T3

unilaterally wrote on the arbitration report that the award was subject to the payment of Jackson and Delvalle's costs and attorneys' fees. The law firm ignored these letters.

On June 8, 2017, plaintiffs filed a pro se breach of contract complaint in the Special Civil Part against the law firm. The complaint alleged that a partner in the law firm

> executed an Arbitration Award form in which he consented, as agent for his firm, to be responsible for litigation expenses and attorneys['] fees incurred by [plaintiffs], for a lawsuit in which the defendant law firm named Jackson and Delvalle as defendants, neither of whom had a duty to the defendant law firm's client and they refused to dismiss the action, attempting to compel damages.

Plaintiffs demanded judgment against the law firm "for all damages permitted by law, all costs and attorneys['] fees in the underlying frivolous [McCormack] litigation and as necessitated by this present action."

The law firm filed an answer, followed by a motion for summary judgment, supported by a brief. Plaintiffs then retained the same attorney who had represented them in the McCormack action. At oral argument on August 8, 2017, the law firm suggested that the trial judge should refer the motion to the judge who had presided over the McCormack action for handling due to his

familiarity with the matter.[5]  The judge agreed to speak to his colleague, adjourned the argument on the motion, and advised the attorneys that he would notify them of the new date.

On August 16, 2017, however, the judge issued an order denying the law firm's motion for summary judgment.  The court clerk then sent the parties a notice stating that the matter was scheduled for trial on September 12, 2017.

At the beginning of the proceedings on September 12, the law firm's attorney reminded the judge that its summary judgment motion had been adjourned so that the judge could discuss the future management of the case with his colleague.  The judge agreed that the order denying the motion had been issued by mistake, and stated he would vacate it.  Plaintiffs' attorney objected to the court hearing the motion on September 12, and stated that she felt "disadvantaged now because [she] didn't know the motion . . . was on until this minute."  The judge immediately offered to adjourn the argument, but the attorney stated she would "argue the motion."

---

[5]  The law firm also objected to plaintiffs' attorney appearing at the argument because she had not filed a Substitution of Attorney pursuant to Rule 1:11-2(a)(1).  However, the attorney had submitted a Notice of Appearance under Rule 1:11-2(c) and, therefore, properly assumed representation for plaintiffs in this matter.

A-1734-17T3

During the argument, plaintiffs' attorney made clear that her clients' sole cause of action was based on their claim that a contract with the law firm had been formed when she wrote on the arbitration report that the award was subject to Jackson and Delvalle being paid their costs and attorneys' fees in the McCormack action. The attorney stated that "[t]he complaint in this action is a complaint in contract," based upon plaintiffs' contention that the law firm's partner implicitly consented to paying their costs and attorneys' fees when he failed to "complain about" the language she added to the arbitrators' award after the arbitration was concluded. Specifically, the attorney stated that "[w]e are now in a contract case because [the law firm's partner] got this form, he signed this form, and he took this form with him when he left."

Plaintiffs' attorney also made clear that plaintiffs were not seeking counsel fees and costs under Rule 1:4-8 and N.J.S.A. 2A:15-59.1. According to the attorney, "the frivolous lawsuit is over. It's a settled issue, it's a done issue, and [plaintiffs] have a right to a subsequent contract that [the law firm partner] signed to expect to be compensated."

At the conclusion of the argument, the judge found there was no meeting of the minds between the parties and, therefore, no contract had been formed. In response to plaintiffs' assertions to the contrary, the judge stated, "You cannot

subsequently add something to what you call a contract and expect that piece of it to be enforceable." However, the judge gave plaintiffs the opportunity to subpoena the arbitrators to see if they could shed any further light on the July 10, 2014 arbitration and, therefore, he did not make a final decision on the law firm's motion at that point.

Prior to the next argument date on October 31, 2017, the law firm filed a "cross-motion for summary judgment on short notice." The law firm's attorney explained that he did so as a prophylactic measure to ensure the summary judgment motion would be resolved.

Plaintiffs did not subpoena the arbitrators. Nevertheless, the judge and the attorneys spoke to one of the arbitrators during a telephone call held in the judge's chambers during the October 31 oral argument. However, the record is not clear what information the arbitrator provided to the court and the parties during this unusual procedure.[6] Therefore, in reviewing this matter de novo, we do not consider either parties' representations concerning the substance of the telephone call.

---

[6] We believe that the telephone call, if it was appropriate to have been made in the first place, should have taken place on the record.

A-1734-17T3

At the conclusion of the argument, the judge granted the law firm's motion for summary judgment. In his oral decision, the judge explained that the arbitrators issued their award at the conclusion of the July 10, 2014 hearing, and did not require anyone to pay plaintiffs' costs and attorneys' fees. Thereafter, plaintiffs' attorney unilaterally added language to the award purporting to require this payment. However, because the partner in the law firm never agreed to pay any of plaintiffs' litigation expenses in the McCormack action, the judge concluded that no contract was formed between the parties. This appeal followed.

On appeal, plaintiffs raise the following contentions:

POINT I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT, IN VIOLATION OF THE COURT RULES AND PROCEDURE, HAVING PREVIOUSLY DENIED SUMMARY JUDGMENT, WHICH WAS NOT APPEALED BY DEFENDANT.

POINT II

RULE 1:4-8 IS NOT RELEVANT; NO JUDGMENT WAS ENTERED, NO MOTION WAS REQUIRED WITHIN 20 DAYS; THE PRIOR CASE ENDED WITH ARBITRATION, DEFENDANT FILED NO RULE 4:21A-6, TRIAL DE NOVO [SIC] NOR TOOK ANY ACTION ON THE "CONDITION SUBSEQUENT."

9

POINT III

THE COMMON LAW TORT, "ABUSE OF PROCESS," ENCOMPASSES THE ALLEGATIONS AND ELEMENTS OF PLAINTIFFS' COMPLAINT, GIVING RISE TO THE ACTION AGAINST DEFENDANT, AND NOT SUBJECT TO DISMISSAL BY SUMMARY JUDGMENT, AS THERE ARE GENUINE ISSUES OF MATERIAL FACT.

POINT IV

DEFENDANTS' [SIC] STATEMENTS, BY, [THE NAMED PARTNER IN THE LAW FIRM], SHOULD APPLY TO DEFENDANT, WHEN HE STATED ON THE RECORD "WE HAVE RULES THAT WE HAVE TO FOLLOW" AND "WE HAVE TO FOLLOW THE RULES." . . . THE COURT SHOULD BE CONCERNED WITH DEFENDANTS' [SIC] MULTIPLE COURT RULES NONCOMPLIANCE AND ABUSES OF PROCESS.

We conclude that plaintiffs' arguments are without sufficient merit to warrant discussion in a written opinion, Rule 2:11-3(e)(1)(E), and we affirm substantially for the reasons set forth by the trial judge in his oral decision. We add the following comments.

Contrary to plaintiffs' assertion in Point I of their brief, the trial judge never denied defendant's motion for summary judgment on a substantive basis. Instead, the judge recognized that the August 16, 2017 order had been entered in error, and immediately vacated it. When plaintiffs' attorney complained that

she did not know that the motion would be argued on September 12, the judge

offered to adjourn the matter to another date, but the attorney decided to proceed.

Under these circumstances, there was certainly nothing untoward in the judge's

correction of the mistake, and both sides had the opportunity to fully present

their arguments prior to the judge's October 31 decision.[7]

Turning to Point II, plaintiffs again assert that the law firm was

contractually bound to pay them the costs and attorneys' fees they incurred in

the McCormack litigation because their attorney unilaterally added a "condition

subsequent" to the report after the arbitrators rendered their award.   This

argument is meritless.

Our review of a ruling on summary judgment is de novo, applying the

same standard as the trial court, namely, the standard set forth in Rule 4:46-2(c).

Conley v. Guerrero, 228 N.J. 339, 346 (2017).  Thus, we consider, as the trial

judge did, whether "the competent evidential materials presented, when viewed

---

[7] Even if the judge had made a substantive ruling denying the law firm's summary judgment motion, nothing would have prevented the judge from later addressing the matter again.  This is so because an order denying a motion for summary judgment "decides nothing and merely reserves issues for future disposition."  Gonzalez v. Ideal Tile Imp. Co., Inc., 371 N.J. Super. 349, 356 (App. Div. 2004), aff'd, 184 N.J. 415 (2005).  Because the order is interlocutory, the trial court may revisit it at any time, in the interests of justice, prior to the entry of final judgment.  R. 4:42-2; Lombardo v. Masso, 207 N.J. 517, 534 (2011).

in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill, 142 N.J. at 540). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Prudential Prop. & Cas. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). We accord no deference to the trial judge's conclusions on issues of law and review issues of law de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Here, it is abundantly clear from the record that the law firm never entered into a contract with plaintiffs to pay their expenses in the prior litigation. It is well established that "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting West Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)). "As a general principle of contract law, there must be a meeting of the minds for an agreement to exist before enforcement is considered." Kernahan v. Home Warranty Adm'r of Fla., Inc., ___ N.J. ___, ___ (2019) (slip op. at 19) (citing Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538 (1953)).

A-1734-17T3

Acceptance of a contract "must be absolute" and "unequivocally shown." Cumberland Farms, Inc. v. New Jersey Dep't of Envtl. Prot., 447 N.J. Super. 423, 439 (App. Div. 2016) (quoting Johnson & Johnson, 11 N.J. at 538). That said, acceptance can take the form of either words or conduct. Graziano v Grant, 326 N.J. Super. 328, 340 (App. Div. 1999) (citing Weichert Co. Realtors, 128 N.J. at 436). Typically, silence alone is insufficient to constitute acceptance; however "the relationships between the parties or other circumstances may justify the offeror's expecting a reply and, therefore, assuming that silence indicates assent to the proposal." Weichert Co. Realtors, 128 N.J. at 436 (citing Johnson & Johnson, 11 N.J. at 539).

Applying these principles, we conclude that the trial judge correctly determined that there was no contract between plaintiffs and the law firm. The law firm partner who attended the July 10, 2014 arbitration hearing never through words, conduct, or silence acknowledged or accepted the "condition subsequent" plaintiffs' attorney boldly attempted to include in the arbitration award after the arbitrators and the partner signed the report. The attorney was not authorized to add this one-sided provision to the award, and it had absolutely

no legal effect.[8]  Simply stated, there was no offer or unqualified acceptance under the circumstances presented in this case and, therefore, the trial judge correctly rejected plaintiffs' baseless argument on this point.

Plaintiffs' arguments under Point III also lack merit.  Although plaintiffs made clear at the oral arguments held on the motion for summary judgment that they were only presenting a breach of contract claim, they now argue for the first time on appeal that they made out a case for "abuse of process" and, therefore, the matter should be remanded for a trial on that claim.  We disagree.

We will ordinarily decline consideration of an issue not properly raised before the trial court, unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance.  Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).  Neither situation exists here and, because plaintiffs limited their

---

[8]  The attorney's unsupported statement also did not even require any specific party to pay plaintiffs' litigation expenses.  The Lodge was the only party the arbitrators believed was liable for anything, and neither the law firm nor its partner were parties to the McCormack action.

A-1734-17T3

arguments before the trial court to the breach of contract, we need not consider their contention on this point.[9]

In any event, we are satisfied that there is no merit to plaintiffs' malicious abuse of process claim.

> The gist of the tort of malicious abuse of process is not commencing an action without justification . . . it is the misuse, or "misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which process is used, once it is issued, is the only thing of importance."
>
> [Baglini v. Lauletta, 338 N.J. Super. 282, 293 (App. Div. 2001) (quoting Prosser & Keaton on Torts § 121 (5th ed. 1984)).]

"Basic to [a cause of action for] malicious abuse of process is the requirement that the [party] perform 'further acts' after the issuance of process 'which represent the perversion of abuse of the legitimate purposes of that process.'" Id. at 294 (quoting Penwag Prop. Co., Inc. v. Landau, 148 N.J. Super. 493, 499 (App. Div. 1997), aff'd, 76 N.J. 595 (1978)). Further acts which may constitute malicious abuse of process may include "attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution and

---

[9] We also reject any attempt by plaintiffs to seek costs and attorneys' fees for frivolous litigation for the same reason. As previously discussed, plaintiffs represented to the trial court that the frivolous litigation was "a settled issue."

even such infrequent cases as the use of a subpoena for the collection of a debt." Ibid. (quoting Prosser & Keeton on Torts, § 121).

Here, plaintiffs' complaint is devoid of any allegations of further acts of misuse of process beyond the law firm's filing of a complaint on behalf of its client against Jackson and Delvalle in the McCormack action. Because the complaint failed to establish a claim for malicious abuse of process as a matter of law, we discern no basis for disturbing the entry of summary judgment in favor of the law firm.

Finally, plaintiffs' arguments in Point IV are merely repetitive of their assertions in their first three points. These contentions continue to lack merit. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                                                          A-1734-17T3